**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE:  ROGER JOHN TRAVERSA, JR., | : | Chapter 7 |
| | : | |
| Debtor | : | Bky. No. 17-16992 ELF |

# M E M O R A N D U M

## I. INTRODUCTION AND PROCEDURAL BACKGROUND

Roger John Traversa, Jr. ("the Debtor") filed this chapter 7 bankruptcy case on October 16, 2017. Following the meeting of creditors on November 22, 2017, the Trustee reported that this was a no-asset case. The Debtor received his chapter 7 discharge on January 25, 2018. The chapter 7 Trustee was discharged on January 26, 2018 and the case was closed on January 28, 2018.

On February 20, 2018, the Debtor filed a motion to reopen the case ("the Motion"). The Debtor filed the Motion for the purpose of initiating two (2) adversary proceedings (against different defendants) for distinct violations of: (a) the automatic stay, during the pendency of the bankruptcy case and (b) the discharge injunction, following the entry of the discharge.[1] See 11 U.S.C. §§362(a), 524(a).

On March 28, 2018, I held a hearing on the Motion. At the hearing, the Debtor elaborated on the bare-bones Motion, providing some detail on the facts that he asserts give rise to the two (2) claims he wishes to prosecute. At the conclusion of the hearing, I directed the

---

[1] Inexplicably, the Debtor filed one of the intended adversary complaints on the same day he filed the motion to reopen. See Adv. No. 18-40.

Debtor (who, though pro se, is a practicing attorney) to organize his presentation by filing a memorandum of law in support of the Motion. The Debtor did so on April 11, 2018. No other interested party has participated in this matter.[2]

For the reasons that follow, I will deny the Motion.

## II.  STANDARD REGARDING REOPENING A BANKRUPTCY CASE

A motion to reopen a closed bankruptcy case is governed by 11 U.S.C. §350(b) and Fed. R. Bankr. P. 5010.  Section 350 of the Code provides: "A case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause."

The determination whether a bankruptcy case should be reopened is committed to the

---

[2]   The absence of opposition to the Motion is not surprising because sufficiency of service of the Motion is questionable.

The first group of putative Defendants are an entity called Erie Avenue Storage, Inc., d/b/a Locker Room Storage ("LRS") and two (2) individuals whom the Debtor alleges are officers or principals of the entity.  The LRS entity and the related individuals are the named Defendants in Adv. No. 18-40.  See n.1, supra.

The certification of service that accompanied the Motion does not indicate that the Motion was served on LRS or the related individuals.  The docket in the adversary proceeding indicates that the clerk issued the adversary summons on February 26, 2018.  The Debtor-Plaintiff has not filed anything suggesting that he served the complaint and summons on the Defendants.  As far as I can tell, LRS and the related individuals had received no notice from the Debtor until he served the supplemental memorandum on them on April 11, 2018.

The putative Defendant in the second matter raised by the Debtor in the Motion is either the Traffic Division of the Philadelphia Municipal Court or Judge Gary Glazer, in his capacity as Administrative Judge of that court.  The Certification of Service accompanying the Motion does state that the Motion and Notice of Motion were served on the Philadelphia, Municipal Court, Traffic Division, 800 Spring Garden Street, Philadelphia, PA 19123~2690, Attn: Hon. Gary S. Glazer.  Given the other failings in the Motion, however, it is unnecessary to determine if service was adequate under Fed. R. Bankr. P. 7004(a)(6).

discretion of the bankruptcy court. The moving party bears the burden of demonstrating circumstances sufficient to justify the reopening of the case. See, e.g., In re Antonious, 373 B.R. 400, 405–06 (Bankr. E.D. Pa. 2007) (citing authorities).

A court should consider a variety of non-exclusive factors when determining the propriety of reopening a case, including:

1. the length of time that the case has been closed;

2. whether a non-bankruptcy forum, such as state court, has the ability to determine the dispute;

3. whether prior litigation in bankruptcy court implicitly determined that the state court would be the appropriate forum to determine the post-bankruptcy rights of the parties;

4. whether any parties would be prejudiced were the case reopened or not reopened;

5. the extent of the benefit which the debtor seeks to achieve by reopening; and

6. whether it is clear at the outset that the debtor would not be entitled to any relief if the case were reopened.

Id.; see also In re Bergman, 2018 WL 1393728, at *1 (Bankr. E.D. Pa. 2018); In re Fellheimer, 443 B.R. 355, 359 (Bankr. E.D. Pa. 2010); In re Redcay, 2007 WL 4270378, at *2 (Bankr. E.D. Pa. 2007).

### III. DISCUSSION: THE FIRST PROPOSED ADVERSARY PROCEEDING

As stated in n.2, supra, the Debtor's first claim involves LRS. For the reasons that follow, I conclude that it would be futile to permit the Debtor to pursue his claims against LRS and the related individuals.

3

### A. Relevant Facts

The Debtor asserts that LRS violated the automatic stay by attempting to enforce a statutory lien it held against the Debtor's property following the Debtor's failure to pay rent on his self-storage unit. According to the Debtor's submission, LRS sent three (3) notices to the Debtor after the October 16, 2017 bankruptcy petition was filed.

The first post-petition notice dated October 30, 2017 was entitled "Notice of Lien - 30 Day" and stated, in relevant part:

> Despite our two previous notification and collection efforts, rent and other charges on your unit remain severely delinquent and past due. Demand is hereby made that you pay the amount due immediately. Failure to pay will result in the sale of the contents of the units(s). Access to the units(s) has been suspended until payment is made in full.
>
> **THIS NOTICE IS TO INFORM YOU THAT UNLESS PAYMENT FOR THE TOTAL AMOUNT PAST DUE IS RECEIVED WITHIN 5 DAYS, THE OWNER WILL ENTER YOUR SPACE, INVENTORY ITS CONTENTS AND BEGIN THE LEGAL PROCESS OF SELLING YOUR PROPERTY AT PUBLIC SALE IN ORDER TO SATISFY ITS LIEN.**

The total due was $230.20, which consisted of $205.20 for rent charged on October 1, 2017 and two (2) late fees assessed on October 6 and 16, 2017 totaling $25.00.

The second post-petition notice dated November 27, 2017 was entitled "Final Notice of Sale" and stated, in relevant part:

> THIS IS THE FOURTH AND FINAL NOTICE SENT TO YOU UNDER OUR NOTIFICATION PROCEDURE. THE PURPOSE OF THIS LETTER IS TO NOTIFY YOU THAT YOU ARE IN DEFAULT OF YOUR RENTAL AGREEMENT, AND TO DEMAND PAYMENT OF THE TOTAL AMOUNT PAST DUE, AND TO ADVISE YOU OF OUR SELLOUT POLICY. . . .
>
> **YOUR PROPERTY WILL BE ADVERTISED FOR PUBLIC SALE TO BE HELD AT YOUR STORAGE SPACE ON December 28, 2017 . . . IN**

**ORDER TO AVOID THIS ACTION, YOU MUST MAKE FULL PAYMENT IN CASH OR CERTIFIED CHECK ONLY AT ANY TIME BEFORE THE SALE DATE**.

The total due stated on this notice was $478.12, which consisted of the past due amount from October ($230.20), $205.20 for rent charged on November 1, 2017, late fees assessed on November 6th and November 15th totaling $25.00, and a fee of $17.72 for a certified letter**.**

The third post-petition notice dated January 21, 2018 was nearly identical to the second notice. Again it stated that it was the "fourth and final notice" sent to the Debtor. However, the total due on this third notice was $743.76, which did not reflect the past due balance for October. The total due consisted of three (3) months of rental charges ($205.20), monthly late fees ($25.00) and certified letter fees ($17.72) for November, December and January.

The Debtor contends that LRS violated the automatic stay by sending these notices.

**B. Analysis of the Alleged Violation of the Automatic Stay**:

The automatic stay "is one of the fundamental debtor protections supplied by the Bankruptcy Code." In re University Medical Center, 973 F.2d 1065, 1074 (3d Cir. 1992). It provides the bankruptcy process with an opportunity "to resolve competing economic interests in an orderly and effective way." Taylor v. Slick, 178 F.3d 698, 702 (3d Cir. 1999) (citation omitted). The stay is designed to: (1) effectively stop all creditor collection efforts; (2) stop all harassment of a debtor seeking relief; and (3) maintain the status quo between the debtor and creditors. Id.; The Connelly Firm, P.C. v. U.S. Dep't of the Treasury, 2016 WL 1559299, at *4 (D.N.J. Apr. 18, 2016); In re Mu'min, 374 B.R. 149, 154 (Bankr. E.D. Pa. 2007).

In the Motion, the Debtor states his intention to prosecute an adversary complaint in

which he alleges that LRS violated 11 U.S.C. §362(a)(4) and (a)(5). Section 362(a)(4) provides that the stay shall prevent "any act to create, perfect, or enforce any lien against property of the estate," whereas section 362(a)(5) provides that the stay shall prevent "any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case . . ." 11 U.S.C. § 362.[3]

I have no doubt that all three (3) notices violated the stay in some fashion. They were sent post-petition and demanded payment of a prepetition debt. But the critical inquiry here is whether the court can hold LRS liable for these alleged violations, thus warranting the reopening of the underlying bankruptcy case to prosecute the matter.

Although not specifically alleged, I interpret the Debtor's claim as requesting relief pursuant to §362(k)(1).[4] For a court to hold a creditor accountable for injuries caused by a violation of the automatic stay, §362(k)(1) requires the debtor to establish the following three (3) things:

       (1) the offending party must have violated the stay;

       (2) the violation must have been willful; and

       (3) the willful violation must have caused the debtor some injury.

In re Miller, 447 B.R. 425, 433 (Bankr. E.D. Pa. 2011); accord, In re Wingard, 382 B.R. 892,

---

[3] The Debtor did not cite these specific subsections in his original adversary complaint, but clarified this assertion in his supplemental memorandum.

[4] The adversary complaint the Debtor filed cited §362(h), which was the prior designation for recovering damages for willful violations of the stay before the Bankruptcy Code was amended in 2005. See 3 Collier on Bankruptcy ¶ 362.12[3] (Alan Resnick, Henry J. Sommer eds., 16th ed. Lexis 2018) ("Collier").

900 (Bankr. W.D. Pa. 2008). Assuming arguendo that Debtor has met the first requirement, I must consider whether there is a basis to believe that the Debtor can satisfy the other two (2) elements of the claim.

To prove a violation was willful, the debtor must show that the creditor had knowledge that the automatic stay was in place. See In re Thomas, 497 B.R. 188, 202 (Bankr. E.D. Pa. 2013). Specific intent is not required to establish willfulness; the debtor only needs to show that the creditor deliberately took the action that violated the stay while knowing of the bankruptcy's existence. Id. For these purposes, knowledge of the existence of the bankruptcy case is considered knowledge of the automatic stay. Id. (citing In re B. Cohen & Sons, Inc., 1991 WL 17874, at *3 (E.D. Pa. Feb. 13, 1991)); In re Wagner, 74 B.R. 898, 905 (Bankr. E.D. Pa. 1987).

Here, LRS was listed as a creditor on the Debtor's bankruptcy schedules. The creditor matrix also listed LRS with the same address provided for on the notices sent to the Debtor. The matrix further indicated a substitute address was provided and the Debtor alleged in his adversary complaint (not in the Motion) that the §341 Notice was returned to the Debtor as undeliverable on October 30, 2017. The Debtor contends in the Motion, however, that he communicated with agents of LRS multiple times during the pendency of the bankruptcy, thereby providing LRS with actual notice of the bankruptcy case. He has not specified the dates or modes of those communications. Therefore, the Debtor's allegations do not make it clear if and/or when LRS received actual notice of the bankruptcy case.

Even if I assume that LRS received notice of the bankruptcy prior to January 21, 2018

(the date of the third notice),[5] the Debtor's claim fails because he has not alleged any injury for these willful violations. Nowhere in the Motion, the memorandum or the adversary complaint does the Debtor reference an injury or damage. Therefore, I will not grant the Motion for the purpose of bringing an adversary complaint against LRS for violation of the automatic stay. See, e.g., In re Crowder, 2016 WL 3453214, at *3 (Bankr. W.D.N.Y. June 16, 2016) (a cognizable injury as a result of the alleged violation is an "essential element" under §362(k)(1)); In re Voll, 512 B.R. 132, 138 (Bankr. N.D.N.Y. 2014) (where no injury results from a §362 violation, an award of damages is clearly inappropriate) (citing cases); Miller, 447 B.R. at 435 (although debtors established a willful violation, court denied motion under §362(k)(1) because they failed to establish they suffered some injury).[6]

---

[5] I can infer that LRS did not have notice of the bankruptcy case before October 30, 2017 given that the §341 Notice was returned to the Debtor as undeliverable on that date. I may also infer that LRS had notice of the bankruptcy by no later than January 21, 2018 because, on the third post-petition invoice, which was dated January 21, 2018, the past due balance from October 1, 2017 (the pre-petition debt) was no longer listed as due; only post-petition rent and late fee charges from November, December and January were listed as part of the total balance due. This fact is not necessarily dispositive, but I give the Debtor that benefit of the doubt since there were no further notices after the one on January 21, 2018. Certainly, it is possible that LRS knew about the case when it sent the second notice in November, but there is insufficient information to make that determination.

[6] At the hearing, I raised the possibility that, even if one (1) or more of the notices violated the automatic stay, LRS may hold a statutory lien on the Debtor's property in storage. See 13 Pa. C.S. §7209. If LRS holds such a lien and the lien is not avoided during the bankruptcy case, LRS ultimately has the right to realize its collateral if the Debtor does not pay the accrued and accruing rent charges, notwithstanding the discharge of his personal liability on the debt. See, e.g., In re Cusato, 485 B.R. 824, 828 (Bankr. E.D. Pa. 2013) (citing cases) (a secured creditor's demand for payment as a condition of satisfying a valid lien on property is not an act to collect a debt "as a personal liability of the debtor" prohibited by §524(a)(2)). If the premise that LRS holds a lien is correct, the Debtor's claim may constitute no more than a technical violation of the automatic stay that caused no damages.

I invited the Debtor to address these issues in his memorandum of law, but he failed to do so.

### C. Analysis of the Alleged Violation of the Discharge Injunction

The Debtor further alleges that LRS violated the discharge injunction. This claim also lacks merit.

Section 524 provides a broad injunction that effectively bars creditors from collecting discharged debts. In contrast to §362(k), which provides a right of action for violations of the automatic stay, §524 is silent with respect to the existence of a private right of action for debtors injured by a creditor's violation of the discharge injunction. While the Third Circuit has not definitively resolved the issue, I have previously observed that, in light of its decision in In re Joubert, 411 F.3d 452, 456 (3d Cir. 2005), it appears unlikely that such a private right of action exists. See In re Cook, 527 B.R. 607, 610 n.3 (Bankr. E.D. Pa. 2015); see also Church v. Accretive Health, Inc., 2014 WL 7184340 (Bankr. S.D. Ala. Dec. 16, 2014); In re Brown, 481 B.R. 351, 357 (Bankr. W.D. Pa. 2012).

If no private right of action exists for a violation of the discharge injunction, a debtor is not without a legal remedy. It is indisputable that the discharge injunction is enforceable through a contempt motion. E.g., In re Meyers, 344 B.R 61, 64-65 (Bankr. E.D. Pa. 2006) (citing cases); see also In re Beeghley, 529 B.R. 98, 105 (Bankr. E.D. Pa. 2015); In re Zine, 521 B.R. 31, 38 (Bankr. D. Mass. 2014). Indeed, some courts have held that this is the sole remedy for enforcing an alleged violation of the discharge. See Barrientos v. Wells Fargo Bank, N.A., 633 F.3d 1186, 1190 (9th Cir. 2011); Cox v. Zale Delaware, Inc., 239 F.3d 910, 917 (7th Cir.2001).

For a court to impose civil contempt sanctions, there must be clear and convincing evidence that: (1) a valid order of the court existed; (2) the defendant had knowledge of the

order; and (3) the defendant disobeyed the order. Meyers, 344 B.R at 65; In re Pollilo, 2010 WL 235125, at *5 (Bankr. E.D. Pa. 2010) ("if the creditor knew of the debtor's bankruptcy filing and knew of the entry of discharge before it continued its actions to collect a discharged, prepetition debt, then civil contempt sanctions may be appropriate").

Here, the Debtor's claim for a violation of the discharge injunction is non-existent. Even if I presume that LRS knew of the valid, January 25, 2018 discharge order, the Debtor has not alleged that LRS took any action, post-discharge, to collect a discharged debt as a personal liability of the Debtor. Therefore, the Debtor has no basis to reopen his chapter 7 case to prosecute a claim against LRS for violation of the discharge injunction.

### IV. DISCUSSION: THE SECOND PROPOSED ADVERSARY PROCEEDING

#### A. Relevant Facts and Analysis: the First Letter

The second adversary proceeding the Debtor intends to file, if the Motion were granted, is against the Philadelphia Municipal Court, Traffic Division, or its administrative judge, for an asserted violation of the discharge injunction. The Debtor contends that two (2) letters that he received from Judge Gary Glazer pertaining to a traffic citation violated the discharge injunction.

In the first letter, dated May 9, 2017, Judge Glazer addresses the waiver of fees associated with a traffic citation. This letter described the following sequence of events in connection with citation No. TT1448823:

1. the Debtor was convicted in absentia on February 7, 2017;
2. a notice of default was sent to the Debtor on March 16, 2017 stating that $189.70 was due;

10

3. on April 6, 2017, the Debtor made a payment of $171.50;
4. on April 10, 2017, the court issued a "Notice of Insufficient Payment" for $18.55 for "warrant and postage fees."

The May 9, 2017 letter was sent to the Debtor in response to his request for a "waiver of fees." In the letter, Judge Glazer advised the Debtor that "the fees were appropriately and accurately assessed."

This letter could not have violated the Debtor's bankruptcy rights. It was sent in May 2017, more than five (5) months **before** the Debtor filed his bankruptcy case. The Debtor's claim that the traffic court letter violated the discharge injunction is therefore frivolous.

### B. Relevant Facts and Analysis: the Second Letter

In the second letter, dated October 27, 2017, Judge Glazer advised the Debtor that the Municipal Court was aware that the Debtor filed a bankruptcy case, but that the court did not intend to file a proof of claim because it appeared that there were no assets available to pay unsecured creditors. The letter also advised the Debtor that the Municipal Court considered all fines and costs outstanding at the time the Debtor filed the petition to be nondischargeable pursuant to §523(a) of the Bankruptcy Code.

It appears that the Debtor seeks to reopen his bankruptcy case to assert that the $18.55 of warrant and postage fees are dischargeable and therefore, that this correspondence in some way violated the discharge injunction.

This claim, as styled by the Debtor, also is frivolous. The second letter was sent during

the bankruptcy case, prior to the entry of the discharge order. Therefore, there is no basis for a cause of action for the violation of a discharge injunction that was not yet in effect when the letter was sent.[7]

Finally, if the Debtor intended to assert that the second letter violated the automatic stay, not the discharge injunction – given the date of the letter, a plausible possibility – the Debtor fares no better for at least two (2) reasons. First, the letter made no attempt to collect a debt. By stating the Municipal Court's position that the debt is nondischargeable, the communication was merely informational and not an action to collect the debt. See Brown v. Pennsylvania State Employees Credit Union, 851 F.2d 81, 85 (3d Cir. 1988) (credit union letter advising debtor that it would terminate her credit union membership if she did not reaffirm her debt was informational and did not violate §362 or §524); In re Schatz, 452 B.R. 544, 549 (Bankr. M.D. Pa. 2011) (informational statement regarding status of debtor's mortgage account that made no threats or require any action on part of the Debtor was merely informational and did not violate the automatic stay). Second, even if the letter were read to be a post-petition demand for payment, once again, the Debtor has not stated that he has suffered any damages as a result of his receipt of the letter.

---

[7] Despite the Debtor's clear reference to the violation of the discharge injunction, it is possible that, in the end, the Debtor is merely seeking a determination of dischargeability with respect to the $18.55 in warrant and postage fees – a proceeding he could have initiated before his bankruptcy case closed. However, in light of the de minimus amount involved, I decline to read the Debtor's request so broadly. Also, in light of the Debtor's failure to explain why he did not bring the issue before the court in a timely manner, even if he reframed his request as a request to reopen the case to file a complaint to determine the dischargeability of the $18.55 debt, I would be disinclined to exercise my discretion to reopen the case to consider this issue, particularly because the state courts have concurrent jurisdiction over this type of dischargeability issue. See 4 Collier ¶ 523.03.

## V.  CONCLUSION

For the foregoing reasons, the Motion will be denied.

Date:  **June 5, 2018**

**ERIC L. FRANK**
**U.S. BANKRUPTCY JUDGE**

cc:  Roger John Traversa, Jr.
1050 Hancock Street #209
Philadelphia, PA 19123